[No. 21524-1-II.   Division Two.   September 11, 1998.]

DIANE BURMEISTER, *Respondent*, v. STATE FARM INSURANCE COMPANY, *Petitioner.*

360

*Michael S. Rogers* of *Reed McClure*, for petitioner.
*Ronald G. Meyers*, for respondent.

ARMSTRONG, J. — Diane Burmeister was the driver and sole occupant of her car when it went off the road, down an embankment, and rolled over. Burmeister filed an underin-

sured motorists (UIM) claim against her insurance company, State Farm Mutual Automobile Insurance Company (State Farm). Burmeister claimed the accident was caused by a phantom vehicle. State Farm denied coverage because Burmeister could not corroborate the existence of the phantom vehicle with evidence other than her own testimony. Burmeister sued to compel arbitration of her UIM claim. State Farm moved for summary judgment. In opposition to the motion and to corroborate the existence of the phantom vehicle, Burmeister offered statements that she made to the investigating police officer and the medical personnel who treated her after the accident. State Farm moved to strike the police report, arguing that the report could not be considered because it had not been properly authenticated and Burmeister had not laid a foundation that her statement in the report was an "excited utterance."

State Farm's motion for summary judgment and most of its motion to strike were denied, the trial court ordered arbitration, and we granted discretionary review. We hold that Burmeister failed to establish, with facts as would be admissible in evidence, the existence of a phantom vehicle. Accordingly, we reverse and remand for entry of summary judgment that State Farm does not provide UIM coverage to Burmeister for the accident.

## FACTS

Diane Burmeister lost control of her car, slid down an embankment and rolled over. Burmeister contends that an oncoming car in her lane caused her to lose control on some pea gravel in the roadway. There were no witnesses to the accident, and the oncoming or "phantom" vehicle was never located.

The time of the accident is unknown, but an ambulance was called to the scene at 9:50 P.M. A police officer arrived 28 minutes later. The officer's report indicates that he spoke with Burmeister in the back of the ambulance. He

reported that "[Burmeister] stated she swerved to avoid a vehicle that crossed the center line." The officer also noted that:

> From evidence at scene, it was obvious that it was [Burmeister's] vehicle that was on the wrong side of the road prior to her going over the embankment. There was pea gravel in the center of the roadway which [she] ran through. No pea gravel was in the traveled portion of the roadway. It would appear that [she] was negotiating curve at a high rate. Her vehicle was on the inside or opposite lane of travel going through. While on the opposite side of road [she] may have seen an oncoming vehicle which caused her to swerve back into her lane.

Based on the officer's report and because there were no independent witnesses, State Farm denied Burmeister's UIM claim. The UIM provision of Burmeister's policy provides coverage for accidents caused by a "phantom vehicle." A phantom vehicle is defined as "a vehicle: (a) whose owner or driver remains unknown; (b) that causes *bodily injury* to the *insured*; and (c) that does not strike either the *insured* or the vehicle the *insured* is *occupying*." But to establish a phantom vehicle claim, "[t]here must be proof of the facts of the accident other than testimony of the insured . . . ."[1]

After State Farm denied Burmeister's request for arbitration, she sued State Farm for breach of contract, negligence,

---

[1]Under RCW 48.22.030, insurance companies issuing auto policies in Washington State must offer coverage to protect the named insured from injury or liability damage caused by the owners or operators of phantom vehicles. Phantom vehicle is defined as:

a motor vehicle which causes bodily injury, death, or property damage to an insured and has no physical contact with the insured or the vehicle which the insured is occupying at the time of the accident if:

(a) The facts of the accident can be corroborated by competent evidence other than the testimony of the insured or any person having an underinsured motorist claim resulting from the accident; and

(b) The accident has been reported to the appropriate law enforcement agency within seventy-two hours of the accident.

RCW 48.22.030(8).

violation of the Consumer Protection Act, and breach of an insurer's duty of good faith. State Farm moved for summary judgment on all the causes of action. With regard to UIM coverage, State Farm argued that Burmeister did not have coverage because she could not corroborate the facts of the phantom vehicle accident with competent evidence other than her own testimony. In response to State Farm's motion for summary judgment, Burmeister submitted, among other items, a copy of the police report and medical records from the paramedics and the emergency room personnel.

State Farm moved to strike numerous exhibits including the police report.[2] The trial court denied State Farm's motion to strike the report. State Farm's motion for summary judgment was also denied, and the parties were ordered to arbitrate the underinsured motorist claim. The trial court's denial of summary judgment as to the bad faith and consumer protection claims was without prejudice; State Farm could renew those motions after arbitration. We granted State Farm discretionary review of the trial court's order on the motion to strike and its ruling on UIM coverage.

State Farm argues that the trial court erred in admitting the police report because it was not properly authenticated as required by ER 901 and because the report is inadmissible as evidence in civil trials under RCW 46.52.080. In addition, State Farm argues that the statement within the report is not an "excited utterance," and that the remaining exhibits, taken as a whole, do not corroborate the facts of Burmeister's alleged phantom vehicle accident.

Authentication

State Farm first argues that the trial court erred in denying its motion to strike the police report because it was not

---

[2]Although both parties refer to a notation in the emergency services report that Burmeister "apparently swerved and missed another vehicle," we do not address their arguments because the trial court excluded the exhibit "to the extent offered to prove the facts of the accident" and Burmeister has not assigned error to this ruling.

authenticated. We agree.[3] A motion for summary judgment is determined based on the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . ." CR 56(c). Supporting and opposing affidavits must (1) be made on personal knowledge; (2) set forth facts as would be admissible in evidence; and (3) show that the affiant is competent to testify on the matters contained therein. CR 56(e); *Grimwood v. University of Puget Sound Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). Sworn or certified copies of papers referred to in an affidavit must be attached to or served with the affidavit. CR 56(e). If documents are not submitted in this form, the opposing party must move to strike before entry of summary judgment. *See Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 580, 731 P.2d 497 (1987), *overruled on other grounds by Phillips v. City of Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989); *Turner v. Kohler*, 54 Wn. App. 688, 691 n.1, 775 P.2d 474 (1989).

██ ██ Here, State Farm moved to strike numerous exhibits, including the police report, because they were "authenticated only by [Burmeister's] counsel's own 'certification' " and this certification "is improper because he has no personal knowledge to authenticate these documents." A ruling on a motion to strike is within the trial court's discretion. *King County Fire Protection Dist. No. 16 v. Housing Auth.*, 123 Wn.2d 819, 826, 872 P.2d 516 (1994). But the court should consider only admissible evidence in a motion for summary judgment. *King County Fire Protection Dist. No. 16*, 123 Wn.2d at 826; *Dunlap v. Wayne*, 105 Wn.2d 529, 535, 716 P.2d 842 (1986). Authentication or identification of a document is a condition precedent to admissibility. ER 901(a). The requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." ER 901(a). ER

---

[3]Because we find this issue dispositive, we do not address State Farm's contention that RCW 46.52.080 precludes admission of police reports in civil trials.

901(b) presents ten illustrations of the requirements of the rule.[4]

■ A document can be authenticated with the testimony of a witness with knowledge that the document is what it claims to be. ER 901(b)(1). But in this case, Burmeister did not submit an affidavit from the officer making the report. Instead, her attorney simply attached a portion of the

---

[4]ER 901(b) states:

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of Witness With Knowledge.* Testimony that a matter is what it is claimed to be.

(2) *Nonexpert Opinion on Handwriting.* Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation.

(3) *Comparison by Court or Expert Witness.* Comparison by the court or by expert witnesses with specimens which have been authenticated.

(4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) *Telephone Conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (i) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (ii) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

(7) *Public Records or Reports.* [Reserved. See RCW 5.44 and CR 44.]

(8) *Ancient Documents or Data Compilation.* Evidence that a document or data compilation, in any form, (i) is in such condition as to create no suspicion concerning its authenticity, (ii) was in a place where it, if authentic, would likely be, and (iii) has been in existence 20 years or more at the time it is offered.

(9) *Process or System.* Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

(10) *Methods Provided by Statute or Rule.* Any method of authentication or identification provided by statute or court rule.

police report to his memorandum in opposition to the motion for summary judgment and stated, "[p]laintiff's attorney . . . certifies under penalty of perjury that exhibits 1 through 24 . . . are true and certified copies of the originals . . . ." As State Farm recognizes, Burmeister's attorney cannot testify to the authenticity or the contents of the police report based on personal knowledge. *See* CR 56(e); ER 602.

■■ Yet, Burmeister contends that the police report is "self-proving" because the officer signed the report near the words "I CERTIFY (OR DECLARE) UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF WASHINGTON THAT THE FOREGOING IS TRUE AND CORRECT." But a signature, even if sworn under penalty of perjury, does not authenticate the document, and Burmeister cites no authority to support this assertion. Similarly, although public records or reports are self-authenticating when certified under the seal of the public officer,[5] the police report here was not offered under the seal of a public officer.

■ Burmeister also argues that the police report does not need to be authenticated because it is admissible as a duplicate under ER 1001(d). We disagree. "A 'duplicate' is a counterpart produced by the same impression as the original . . . ." ER 1001(d). The Comment to ER 1001 states:

> The rules in Title X do not govern the authenticity of an "original[.]" That determination is made by reference to the rules in Title IX. The authenticity of any piece of evidence, even documents which are self-authenticating under rule 902, may be disputed by the opposing party.

Thus, even though photocopies may be admissible under ER 1003, authenticity of the original must still be established. ER 1003. Because Burmeister did not submit an affidavit of the police officer, the report was not properly

[5]RCW 5.44.040; CR 44(a)(1).

authenticated. Therefore, the trial court erred in considering the police report.[6]

■ Burmeister also contends that State Farm should be estopped from challenging the admissibility of the police report. She argues that State Farm cannot rely on the officer's statements in the report to deny coverage and then contest the admissibility of the report. But State Farm's use of the document before Burmeister sued has no bearing on the evidentiary requirement that Burmeister authenticate the police report. Moreover, Burmeister cannot show that she reasonably relied upon State Farm's pretrial use of the report in failing to authenticate it. *See Leonard v. Washington Employers, Inc.*, 77 Wn.2d 271, 281, 461 P.2d 538 (1969) ("absent fraud or misrepresentation, estoppel runs in favor only of those who have reasonably relied on another's conduct or declarations.") Further, the cases cited by Burmeister do not support her assertion. *See Transamerica Ins. Group v. Chubb & Son, Inc.*, 16 Wn. App. 247, 554 P.2d 1080 (1976); *Morrissette v. Continental Life & Accident Co.*, 9 Wn. App. 789, 791-92, 514 P.2d 1391 (1973). Thus, the doctrine of estoppel is not applicable.

■ Even if the police report could be considered, Burmeister has not shown that her statement to the officer that she swerved to avoid another vehicle was an "excited

---

[6]Burmeister states in her reply brief that "respondent's counsel" suggested during argument before the trial court that "if the court was concerned about the multiple sources of corroboration . . . that a continuance should be imposed to allow the Washington State Patrol Trooper to be located and deposed." She further states that because the court admitted the trooper's report based on estoppel, a continuance was not necessary. Under CR 56(f), the trial court may order a continuance to allow affidavits to be obtained or depositions taken "[s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition." We are unable to verify Burmeister's oral request for a continuance because the parties did not supply a report of proceedings. State Farm denies that a request for a continuance was made. Further, an oral request for a continuance does not appear to comply with the requirement in CR 56(f) that such a request be made by affidavit. *See* CR 56(f); *Turner v. Kohler*, 54 Wn. App. 688, 692-94, 775 P.2d 474 (1989) (denial of request for continuance proper where affidavit did not mention CR 56(f), explicitly request a continuance, nor state the reason for delay).

utterance.'"[7] In *Nationwide Ins. v. Williams*, 71 Wn. App. 336, 344, 858 P.2d 516 (1993), we held that an insured's excited utterances may be used as corroborative evidence of a phantom vehicle. An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." ER 803(a)(2). To be admissible, Burmeister must demonstrate, among other elements, that her statement was a spontaneous or instinctive utterance of thought and not the product of premeditation, reflection, or design. *Beck v. Dye*, 200 Wash. 1, 9-10, 92 P.2d 1113, 127 A.L.R. 1022 (1939).

██ ██ Burmeister did not submit affidavits from the police officer, the paramedics, or the emergency room workers to show that she was still under the influence of the accident at the time the statement was made. Instead, she argues that her medical evidence establishes that her statement was made spontaneously: (1) she made her statement to the officer while in the back of the ambulance; (2) she complained of head, neck, and back injuries and was strapped to a backboard; (3) she slipped in and out of consciousness; and (4) her blood pressure readings were 165/96 in the ambulance and then dropped to 126/72 when she was treated in the emergency room.

She also points out that an excited utterance can be made in response to a question, *Robbins v. Greene*, 43 Wn.2d 315, 321, 261 P.2d 83 (1953), and that it need not be made simultaneously with the event it describes, *May v. Wright*, 62 Wn.2d 69, 73-74, 381 P.2d 601 (1963). Although these assertions are accurate, the statement must be still spontaneous and made "under circumstances which would negative the thought that it might have been made with design or premeditation." *Robbins*, 43 Wn.2d at 321. Here,

---

[7]Burmeister also contends that her statement is admissible to corroborate the existence of a phantom vehicle as a present sense impression, ER 803(a)(1), or a then existing mental, emotional, or physical condition, ER 803(a)(3). But because these assertions are made without argument or citation to authority, we do not consider them. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998) (citing *State v. Johnson*, 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)).

Burmeister cannot connect her medical evidence with the foundation requirements that her statement was made while she was still under the stress of excitement caused by the event, *State v. Brown*, 127 Wn.2d 749, 758, 903 P.2d 459 (1995), and that it was not the product of premeditation, reflection, or design, *Beck*, 200 Wash. at 10.

For example, a state of nervousness or anxiety following an accident does not alone ensure the spontaneity or reliability of a self-serving statement. *See McCandless v. Inland NW Film Serv., Inc.*, 64 Wn.2d 523, 392 P.2d 613 (1964). In *McCandless*, the Supreme Court rejected as excited utterances a truck driver's statements made in a phone call to his employer shortly after a fatal accident. Even though a witness to the statements testified that the truck driver was a nervous wreck and seemed to collapse because his legs were rubbery, the court concluded that the "telephone conversation did not constitute a natural statement or declaration growing out of the event, but on the contrary, contained a narrative of a past event . . . ." *Id.* at 532-33. "The statements were . . . neither spontaneous nor instinctive utterances evoked or dominated by the transaction or occurrence itself, but made—even though under great emotional shock, stress and anxiety—following inspection of the truck body and after walking to the service station and dialing the telephone number." *Id.* at 533-34.

Here, the officer's report does not reveal Burmeister's demeanor or the seriousness of her injuries. The emergency reports indicate that she complained of a head, neck, and back injuries but do not tell us the severity of these injuries or whether she was in a state of excitement from those injuries at the time the statement was made. Burmeister cites numerous cases in which an excited utterance has been found. But in each case, witnesses other than the declarant testified as to the circumstances under which the statement was made. *May*, 62 Wn.2d at 69; *Ewer v. Johnson*, 44 Wn.2d 746, 270 P.2d 813 (1954); *Robbins*, 43 Wn.2d 315; *Lucchesi v. Reynolds*, 125 Wash. 352, 216 P. 12

(1923); Walters v. Spokane Int'l Ry., 58 Wash. 293, 108 P. 593 (1910). In Nationwide, we said that an insured's statement that he was run off the road, when "presented by a witness who heard the excited utterance, is not the 'testimony of the insured' and thus is not excluded by the policy or [RCW 48.22.030(8)]." Nationwide, 71 Wn. App. at 344. Because Burmeister's evidence does not demonstrate the reliability or spontaneity of her statement, the trial court erred in considering it to corroborate the existence of a phantom vehicle.

Other Evidence of a Phantom Vehicle

Burmeister also argues that pea gravel in the roadway, photographs of the accident scene, and evidence of her sobriety corroborate her claim that a phantom vehicle caused the accident.[8]

Corroborating evidence " 'must tend to verify the claimant's version of the facts' "; it " 'is something which leads an impartial and reasonable mind to believe that material testimony is true, testimony of some substantial fact or circumstance independent of a statement of a witness.' " Gerken v. Mutual of Enumclaw Ins. Co., 74 Wn. App. 220, 225-26, 872 P.2d 1108 (1994) (quoting Farmers Ins. Exch. v. Colton, 264 Or. 210, 504 P.2d 1041 (1972)). None of these exhibits, taken independently or as a whole, verifies Burmeister's version of the accident over the officer's conclusion that she was on the wrong side of the road and simply lost control of her car.

State Farm asks us to direct entry of summary judgment in their favor as to Burmeister's claims of bad faith. Because our discretionary review was limited to the trial court's determination of UIM coverage, we decline to do so and remand the remaining issues to the trial court.

Burmeister requests attorney's fees at the trial court level and on appeal. When an insured is compelled to as-

---

[8]She also discusses a videotape of the scene which was excluded by the trial court.

sume the burden of legal action to obtain the benefit of her insurance policy, she is entitled to recover attorney's fees. *McGreevy v. Oregon Mut. Ins. Co.*, 128 Wn.2d 26, 28, 904 P.2d 731 (1995); *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Because we have held that Burmeister did not establish UIM coverage under her State Farm policy, she is not entitled to attorney's fees.

In conclusion, we hold that the police report should not have been considered by the trial court because it was not properly authenticated. Further, even if the police report was properly before the court, Burmeister failed to establish that her statement in the report corroborates the existence of a phantom vehicle because it is admissible as an "excited utterance." Accordingly, the trial court erred in denying State Farm's motion for summary judgment on the UIM coverage issue. We reverse and remand for entry of summary judgment for State Farm on the coverage issue and for resolution of the remaining issues not decided in this appeal.

SEINFELD and HUNT, JJ., concur.