IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| DEBBIE BUCHANAN, | ) | |
| | ) | No. 40283-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PASSAGES FAMILY SUPPORT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | |

STAAB, J. — Debbie Buchanan appeals the trial court's grant of summary judgment dismissing her medical malpractice and fraud claims against Passages Family Support, as well as the denial of her motion for reconsideration. She argues that the trial court erred by: (1) requiring expert medical testimony to establish the standard of care, breach, and causation in her malpractice claim and rejecting her expert's letter as unsworn, (2) denying reconsideration based on the letter's untimeliness and failure to establish a violation of the standard of care and show causation, and (3) dismissing her fraud claims based on the determination that they arose from "health care" and required expert testimony under chapter 7.70 RCW.

We hold that the trial court properly granted summary judgment on Buchanan's malpractice claim and did not abuse its discretion in denying reconsideration. However, the trial court erred in dismissing Buchanan's fraud claims. The only basis for Passages' motion to dismiss Buchanan's fraud claims was her failure to identify a medical expert. Because those claims did not arise from "health care" under chapter 7.70 RCW, Buchanan was not required to submit medical expert testimony. Accordingly, we affirm in part and reverse in part.

BACKGROUND

Because the trial court granted summary judgment in favor of Passages Family Support, the facts are set forth in the light most favorable to Buchanan.

In 2018, Buchanan sought counseling to improve her marriage and discovered Passages Family Support, a peer-operated outpatient behavioral health clinic that exclusively served Medicaid recipients. Unaware of the clinic's Medicaid-only policy, Buchanan provided her private insurance information during intake. In September 2018, Buchanan completed her intake and was officially accepted into Passages' program.

Buchanan began receiving services at Passages, including "Eye Movement Desensitization and Reprocessing" (EMDR) therapy. She attended 26 EMDR therapy sessions at Passages conducted by a therapist. During these sessions, Buchanan experienced headaches, stomachaches, and worsening preexisting conditions, initially

2

attributing them to temporary side effects of EMDR. However, she later suspected these symptoms might be linked to improper EMDR techniques used by her therapist.

In February 2020, Passages' clinical supervisor informed Buchanan that the clinic could not accept her insurance because it exclusively accepted Medicaid. During a meeting with the clinical supervisor, office manager, and Buchanan's husband, Buchanan was officially informed that Passages had never billed her private insurance. Passages provided her with three additional therapy sessions to assist with transition to another therapist, and ultimately discharged her due to her ineligibility for Medicaid. Following her discharge, Buchanan researched EMDR and concluded that the therapist had deviated from standard protocols, failing to complete necessary phases of treatment.

*Procedure*

In February 2023, Buchanan filed a complaint against Passages alleging medical malpractice, fraud, fraudulent concealment, negligent misrepresentation, and falsified documents, seeking $1.96 million in damages.[1] Passages answered the complaint, denying all allegations.

On June 22, 2023, Passages moved for summary judgment dismissal of "all claims," arguing that Buchanan did not have expert testimony to establish a breach of the

---

[1] We collectively refer to Buchanan's fraud, fraudulent concealment, negligent misrepresentation, and falsified documents claims as "fraud claims."

standard of care, and that the breach proximately caused her damages as required by chapter 7.70 RCW. The hearing was set for one month later, on July 21. At Buchanan's request, Passages agreed to continue the hearing to September 15, a 56-day continuance.

Prior to the continued hearing, Buchanan asked Passages for another continuance, which Passages declined. As a result, Buchanan filed a motion requesting the court continue the hearing so that she could continue her attempts to retain an expert.

Buchanan also filed a memorandum opposing summary judgment. With regard to the medical malpractice claim, she argued that there were genuine issues of material fact because Passages' therapist did not have credentials and failed to meet the degree of care required in the prescribed practice of EDMR. However, Buchanan failed to file an expert declaration to support her medical malpractice claims. With regard to her fraud claims, she argued that Passages discharged her because it did not take or bill her insurance and provided her with services "free of charge" without offering other means of payment.

Passages replied, again arguing that Buchanan did not have an expert to support her medical malpractice claim against it. Other than the introductory paragraph, however, the reply made no mention of the fraud claims.

At the September 15 hearing, over defense counsel's objection, the court granted Buchanan a 30-day continuance, to October 20, to secure an expert declaration containing opinions on the standard of care, how it was breached, and how the breach caused Buchanan's injuries.

On October 19, one day before the continued hearing, Buchanan submitted an unsigned, unsworn, and uncertified letter from an expert psychologist. In the letter, the expert opines that Passages' therapist "departed from the applicable standard of care by negligently performing EMDR." Clerk's Papers (CP) at 160. The letter additionally provides:

> Did not follow the Standard EMDR Therapy prescribed protocol in the following manner:
>
> • Did not complete a Trauma History
> • Did not follow a Trauma Target Treatment Plan
> • Did not seem to include a "*Target Assessment (Old Memory)*" EMDR procedure.
> • Kept Them-tappers going throughout the sessions when they were used.
> • Implemented his cognitions rather than the client's.
> • Did not follow through coming to an agreement about Negative or Positive Cognitions with client.
> • Consistently failed to return to Target and/or evaluate SUD levels with client.
>  . . . .
>
> Passages Family Support and their counselor . . . breached their duty by either failing to have appropriate procedures or protocols, and/or by failing to ensure that their employee followed them. Failure to comply with the applicable standard of care, therefore, a direct and proximate result of the failure to follow proper EMDR therapy procedures is known and can cause harm to a client.
>
> Having reviewed this case, it is in my expert opinion that the symptoms Debbie Buchanan is experiencing correlate with the improper facilitation of EMDR therapy treatments.

CP at 161.

After hearing argument from both parties, the court pointed out that the letter was not a declaration and not sworn under penalty of perjury, and that it constituted inadmissible hearsay. Buchanan then requested another continuance to correct her letter to comply with the civil and court rules. Defense counsel objected. Ultimately, the court denied Buchanan's request for another continuance and granted Passages' motion for summary judgment dismissal of all claims.

Buchanan subsequently filed a motion for reconsideration under CR 59, only with regard to the medical malpractice claims, on the basis of newly discovered evidence, irregularity in the proceedings, surprise, and because substantial justice had not been done. Attached to her motion was the expert's letter, now signed and sworn, dated October 25. In addition, Buchanan submitted two additional exhibits in support of her motion: (1) "Exhibit 3," an "Explanation of Findings in this case" that was unsigned, undated, and unsworn but purported to be authored by her expert, and (2) "Exhibit 4," screenshots of negative online reviews of Passages.

The trial court denied Buchanan's motion for reconsideration. The court ruled that the expert's declaration was: (1) untimely, and (2) insufficient to defeat summary judgment because it contained conclusory statements without factual support that failed to establish a violation of the standard of care and failed to show causation. The court further ruled that the expert declaration was not admissible under ER 702 as expert testimony because the expert did not clearly describe the standard of care, and instead

6

only explained that he would have taken a different course of action if he treated

Buchanan.  In addition, the court refused to consider Exhibit 3 because it was not

admissible as a declaration because it was unsworn, and Exhibit 4 because it consisted of

inadmissible hearsay and lacked foundation.

Buchanan appeals the dismissal order and order denying reconsideration.

ANALYSIS

MEDICAL MALPRACTICE CLAIM

Buchanan argues that the trial court erred in granting summary judgment based on

her failure to file a sufficient expert declaration on the standard of care, breach, and

causation.  She further argues that the trial court erred in denying her motion for

reconsideration.  Passages argues that summary judgment should be affirmed because

Buchanan's expert letter was untimely, unsigned, unsworn in violation of CR 56(e), and

cites to *Young Soo Kim v. Choong-Hyun Lee*[2] in support of its argument.  Passages

further argues that the trial court did not abuse its discretion when it denied

reconsideration.  We conclude that the trial court did not error in dismissing the medical

malpractice claims on summary judgment.

---

[2] 174 Wn. App. 319, 300 P.3d 431 (2013).

"This court reviews summary judgment orders de novo." *Hisle v. Todd Pac. Shipyards Corp.,* 151 Wn.2d 853, 860, 93 P.3d 108 (2004). "When reviewing an order granting summary judgment, this court engages in the same inquiry as the trial court," considering "[a]ll facts and reasonable inferences . . . in the light most favorable to the nonmoving party." *Kahn v. Salerno*, 90 Wn. App. 110, 117, 951 P.2d 321 (1998). Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). "[A] defendant may move for summary judgment on the ground [that] the plaintiff lacks competent . . . evidence" to support its claim. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 226, 770 P.2d 182 (1989). After the moving party submits a sufficient declaration, the nonmoving party must set forth specific facts rebutting the moving party's contentions and disclosing that a genuine issue of material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). We may affirm a trial court's disposition of a summary judgment motion on any basis supported by the record. *Redding v. Virginia Mason Med. Ctr.*, 75 Wn. App. 424, 426, 878 P.2d 483 (1994).

Chapter 7.70 RCW governs "Actions for Injuries Resulting from Health Care," which are often referred to as medical malpractice cases. *See*, *e.g.*, *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018). In such a case, a plaintiff must show that "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the

8

profession or class to which he or she belongs, in the state of Washington, acting in the

same or similar circumstances" and that "[s]uch failure was a proximate cause of the

injury complained of." RCW 7.70.040(1)(a), (b).

In medical malpractice cases, "[e]xpert testimony will generally be necessary to

establish the standard of care," and is required on the element of proximate cause.

*Berger v. Sonneland*, 144 Wn.2d 91, 110, 26 P.3d 257 (2001). "If a plaintiff lacks

competent expert testimony to create a genuine issue of material fact with regard to one

of the elements of the claim and is unable to rely on an exception to the expert witness

testimony requirement, a defendant is entitled to summary judgment." *Reyes*, 191 Wn.2d

at 86.

If a defendant moves for summary judgment based on the absence of competent

medical evidence to establish a prima facie case, the burden shifts to the plaintiff to

produce testimony from a qualified expert witness alleging specific facts establishing a

cause of action. *Young*, 112 Wn.2d at 225-26.

"We review a trial court's denial of a motion for reconsideration for abuse of

discretion." *Kleyer v. Harborview Med. Ctr.*, 76 Wn. App. 542, 545, 887 P.2d 468

(1995). A trial court abuses its discretion when it exercises it in a manifestly

unreasonable manner or bases it upon untenable grounds or reasons. *State v. Stenson*,

132 Wn.2d 668, 705, 940 P.2d 1239 (1997).

We consider in turn the trial court's grant of summary judgment and denial of reconsideration with regard to Buchanan's medical malpractice claims.

1. *The trial court properly granted summary judgment on the medical malpractice claim*

Under CR 56(c), the party opposing summary judgment is required to file and serve opposing affidavits "not later than 11 calendar days before the hearing." In addition, "CR 56(e) requires that evidence offered in support of or in opposition to a motion for summary judgment be in the form of sworn affidavits or declarations made under penalty of perjury." *Young Soo Kim*, 174 Wn. App. at 326. While courts do not always demand strict compliance with CR 56(e), this court has declined to excuse an expert letter purporting to establish a necessary element of the claim for noncompliance with CR 56(e). *Young Soo Kim*, 174 Wn. App. at 327 ("[W]e are aware of no case, nor has any been cited to us, that excuses in whole the requirement that statements purporting to establish a necessary element of a claim or defense be in the form of sworn affidavits or declarations made under penalty of perjury.").

In lieu of an affidavit complying with CR 56, GR 13(a) requires an unsworn statement "must state: (1) that it is certified or declared by the person to be true under penalty of perjury (2) the date and place of its execution, and (3) that it is so certified or declared under the laws of the state of Washington."

10

In this case, Buchanan filed her expert letter purporting to establish the standard of care, breach, and causation elements of her medical malpractice claim on October 19, one day before the summary judgment hearing, in violation of CR 56(c). And, as the trial court pointed out at the hearing, Buchanan's experts letter was not a declaration and was not sworn under penalty of perjury as required by CR 56(e) and GR 13. Accordingly, the trial court properly granted summary judgment because Buchanan's letter evidence failed to comply with CR 56(c), (e), and GR 13.

In reply, Buchanan argues that the trial court granted her a 30-day continuance, but because of the timeline required by CR 56(c), she in effect only had 19 days to obtain an expert declaration. This argument is unpersuasive for several reasons.

First, the trial court's grant of a 30-day continuance did not excuse Buchanan's failure to comply with CR 56(c). As was repeated numerous times during the summary judgment hearings, pro se litigants are held to the same standards and "bound by the same rules of procedure and substantive law as attorneys." *Westberg v. All-Purpose Structures, Inc.*, 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). Licensed attorneys must comply with CR 56(c), and so too must Buchanan. If Buchanan needed more time before the continued hearing she could have moved the trial court for another continuance or requested clarification of what the court asked of her.

Second, we disagree with Buchanan that she was only given 19 days to find an expert. Passages originally filed its motion for summary judgment on June 22, 2023, but

after several continuances, the motion was not actually heard until October 20, 2023.

Thus, Buchanan actually had 120 days to find and submit evidence from an expert

witness.

    *2. Buchanan's Other Summary Judgment Related Arguments*

    Buchanan argues that there are exceptions to the expert testimony requirement,

and that accordingly, the trial court erred when it granted summary judgment based on its

ruling that expert testimony was an absolute necessity required to defeat Passages'

summary judgment motion. Each argument is discussed in turn.

    First, citing to *Young*,[3] Buchanan contends that lay testimony is admissible to

show "obvious impairments," and sometimes for observations of injury as an exception

to the expert testimony requirement. Buchanan cites to lay person affidavits in the record

to establish her "conditions, ailment, and impairments." Appellant's Br. at 41.

    Buchanan is correct that the *Young* court acknowledged that lay testimony is

sometimes admissible in medical malpractice actions to show "obvious impairments" and

"observations of health, disease, or injury." 112 Wn.2d at 228-30. Likewise, she is

correct that the record contains lay person affidavits describing her impairments.

However, nothing in *Young* stands for the proposition that such lay person affidavits are

alone sufficient to establish the relevant standard of care, breach, and causation elements

---

[3] 112 Wn.2d 216.

of a medical malpractice case. *See Id.* at 227-31. Rather, the *Young* court reaffirmed the general rule that the relevant standard of care can only be testified to by a physician who has demonstrated that they have the sufficient expertise in the relevant specialty. *Id*.

Next, Buchanan argues that an exception to the expert testimony requirement exists where "inferences are self-evident in the evidence that negligence would be understood by a lay person." She contends that the evidence in this case is self-evident and that the therapist "had no credentials nor certifications in EMDR self-evident inference." Appellant's Br. at 41, 42.

She is correct that the *Young* court, citing the Missouri Supreme Court, explained:

> "What is or is not standard practice and treatment in a particular case, or whether the conduct of the physician measures up to the standard is a question for experts and can be established only by their testimony.
>
> The only exception to such rule is that where the want of skill or lack of care is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, expert evidence is not essential."

*Young*, 112 Wn.2d at 228-29 (quoting *Hart v. Steele*, 416 S.W.2d 927, 932, 37 A.L.R.3d 456 (Mo. 1967).

However, here, the lack or want of skill was not so apparent to be within the comprehension of laymen and requires only common knowledge. EMDR and the relevant credential and certification requirements require more than common knowledge

within the comprehension of laymen. Moreover, Buchanan fails to actually cite to and explain any of the "evidence" she believes satisfies this exception.

Third, Buchanan argues that if the doctrine of res ipsa loquitur[4] applies, then expert testimony is not required. She spends a large portion of her opening brief explaining the doctrine and arguing that it applies in this case. Passages responds, arguing that we should decline to review this issue because Buchanan failed to call this theory to the attention of the trial court as required by RAP 9.12. In reply, Buchanan contends that she did call this issue to the trial court. We agree with Passages.

Under RAP 9.12, "[o]n review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court." Here, Buchanan failed to argue res ipsa loquitur in her

---

[4] "A plaintiff can, in limited circumstances, rely on the doctrine of res ipsa loquitur to satisfy the breach element of his or her pleading requirements, provided that the evidence shows that '(1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.'" *Reyes*, 191 Wn.2d at 89-90 (internal quotation marks omitted) (quoting *Pacheco v. Ames*, 149 Wn.2d 431, 436, 69 P.3d 324 (2003)). Even if we were to accept Buchanan's argument that res ipsa loquitur applies in this case, the doctrine only applies to the element of breach. *See id*. Buchanan would still be required to submit expert testimony of the standard of care and causation issues.

14

memorandum opposing summary judgment.[5]  Because she failed to call the trial court's attention to the issue, we decline to consider the issue.

In Buchanan's reply brief, she argues that she raised the issue of res ipsa loquitur in her motion for reconsideration.  She is correct.  However, she fails to explain how raising the issue for the first time in her motion for reconsideration warranted review under any of the grounds she sought reconsideration under.  For example, she fails to explain how the newly raised theory constituted irregularity in the proceedings (CR 59(a)(1)), accident or surprise (CR 59(a)(2)), newly discovered evidence (CR 59(a)(4), or that substantial justice had not been done (CR 59(a)(9)).  Accordingly, the trial court did not abuse its discretion when it declined to entertain the theory on reconsideration.

Fourth, Buchanan, citing to the *Restatement (Second) of Torts* § 288A (Am. L. Inst. 1965), appears to argue that negligence per se is an exception to the requirement of expert medical testimony in a malpractice case.  However, she fails to cite any Washington authority related to this proposition and argument.  Nevertheless, in Washington, "[a] breach of a duty imposed by statute, ordinance, or administrative rule shall not be considered negligence per se, but may be considered by the trier of fact as

---

[5] In Buchanan's reply brief, she argues that she referenced the doctrine by using the term "self-evident" at CP at 118.  This argument is unconvincing.  Nothing at CP at 118 references res ipsa loquitur, and the term "self-evident" is not sufficient to call the doctrine to the trial court's attention.

evidence of negligence," barring certain exceptions. RCW 5.40.050. Nothing in this statute provides that evidence of a statute, ordinance, or administrative rule violation precludes the requirement of expert medical testimony in a malpractice case.

Fifth, Buchanan points out that the Supreme Court overturned the certificate of merit requirement in former RCW 7.70.150 (2006) as unconstitutional in *Putman v. Wenatchee Valley Medical Center, P.S.*, 166 Wn.2d 974, 984-85, 216 P.3d 374 (2009). She extrapolates from this holding that the entire chapter 7.70 RCW is similarly unconstitutional as restricting access to the courts, and violating her First and Fourteenth Amendment rights. Passages argues that we should decline to consider this argument under RAP 9.12 because it was not called to the attention of the trial court on summary judgment. In Buchanan's reply brief, she asserts that she raised this argument below. Buchanan's argument fails.

Buchanan did argue in her opposition to summary judgment that former RCW 7.70.150 (2006) violated her constitutional right to court access. But that statute was already deemed unconstitutional at that point in time. Buchanan did not argue that chapter 7.70 RCW as a whole was unconstitutional. Thus, the argument that she raises on appeal, that chapter 7.70 RCW as a whole is unconstitutional, was not called to the attention of the trial court and, therefore, we decline to consider it for the first time on appeal. RAP 9.12; *see also* RAP 2.5(a).

Finally, in Buchanan's reply brief, she argues, for the first time, that the trial court violated the Judicial Code of Conduct by acting unfairly and impartially. However, arguments raised in a reply brief are too late to warrant our consideration. *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). Thus, we decline to review these arguments.

### 3. The trial court did not abuse its discretion when it denied reconsideration

Buchanan argues that any deficiencies in her expert letter were corrected by her motion for reconsideration. Although Buchanan moved for reconsideration on the grounds of CR 59(a)(1), (3), (4), and (9), her primary argument on reconsideration was that the newly filed expert letter constituted newly discovered material evidence under CR 59(a)(4).[6] This rule provides:

> **Grounds for New Trial or Reconsideration.** On the motion of the party aggrieved, a verdict may be vacated and a new trial granted to all or any of the parties, and on all issues, or on some of the issues when such issues are clearly and fairly separable and distinct, or any other decision or order may be vacated and reconsideration granted. Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
>
>  . . . .

---

[6] Buchanan failed to assign error to the trial court's denial of her motion for reconsideration. Further, Buchanan fails to provide argument as to why the trial court's decision to deny reconsideration was an abuse of discretion under the rules she cited in her motion (CR 59 (a)(1), (3), (4), and (9)). Accordingly, this memorandum's analysis pertains to the ground that the trial court appeared to base its decision on CR 59(a)(4).

Newly discovered evidence, material for the party making the application, which the party could not with reasonable diligence have discovered and produced at the trial.

On reconsideration, the trial court ruled that the newly filed expert letter, now sworn and signed, was untimely, and that even if it was timely, it contained conclusory statements without adequate factual support to defeat Passages' summary judgment motion. The court refused to consider Exhibit 3 since it was unsworn, and refused to consider Exhibit 4 because it consisted of inadmissible hearsay and lacked foundation.

As a threshold issue, we note that Buchanan failed to assign error to the trial court's denial of her motion for reconsideration. In addition, she fails to provide argument as to why the trial court's denial of her motion was an abuse of discretion under CR 59.

Nevertheless, we conclude that the trial court did not abuse its discretion in declining to consider the evidence submitted in support of the motion for reconsideration. The updated expert letter did not constitute newly discovered evidence under CR 59(a)(4). "If the evidence was available but not offered until after that opportunity passes, the parties are not entitled to another opportunity to submit that evidence." *Wagner Dev., Inc. v. Fid. & Deposit Co.,* 95 Wn. App. 896, 907, 977 P.2d 639 (1999); *Adams v. Western Host, Inc.*, 55 Wn. App. 601, 608, 779 P.2d 281 (1989) ("The realization that [the] first declaration was insufficient does not qualify the second declaration as newly discovered evidence.") (alteration in original). Here, the expert's

letter was available at the time of Passages' summary judgment motion, Buchanan simply failed to comply with court rules applicable to her expert's letter.

Similarly, we conclude that the trial court did not abuse its discretion when it declined to consider the two exhibits Buchanan submitted with her reconsideration motion.[7] Exhibit 3, the "Explanation of Findings in this case" was unsigned, undated, and unsworn in violation of Cr 56(e) and GR 13. Moreover, despite characterizing the exhibit as newly discovered evidence, Buchanan failed to explain how the exhibit actually constituted newly discovered evidence under CR 59(a)(4) or provided support for any of the other cited grounds of reconsideration.[8]

Relatedly, Exhibit 4, the screenshots of online reviews of Passages, constituted inadmissible hearsay under ER 802[9] and lacked foundation. Buchanan offered the out-of-court statements, the reviews, to prove the truth of the matter they asserted, and she provided no foundation for them.

---

[7] Buchanan fails to actually address these specific exhibits in her opening brief.

[8] In Buchanan's reply brief, she contends that the trial court erred when it found Exhibit 3 to be hearsay. This argument fails. The trial court found that Exhibit 4 constituted hearsay, not Exhibit 3.

[9] "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 802. "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c).

In addition to the evidentiary objections, the trial court also denied reconsideration on the grounds that the expert declaration was insufficient because it relied on conclusory statements without factual support in violation of CR 56(e) and because the expert did not establish a violation of the standard of care or causation. This decision was well within the trial court's discretion.

Generally, an expert declaration that consists of conclusory statements without factual support cannot defeat a motion for summary judgment. *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 492, 183 P.3d 283 (2008); *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 25, 851 P.2d 689 (1993); *see also* CR 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of a pleading, but a response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."). To withstand summary judgment, an expert must do more than claim that proper treatment required a correct diagnosis or different medical decisions; they must present specific facts defining the applicable standard of care and demonstrating how the defendant deviated from it. *Reyes*, 191 Wn.2d at 89.

Here, Buchanan's expert identified seven examples of when the therapist "[d]id not follow the Standard EMDR Therapy prescribed protocol" and generally asserted that they "correlated" to Buchanan's "symptoms," but he did not provide sufficient factual support to substantiate these claims. For instance, as Passages argues, the expert claimed

that Passages "did not complete a Trauma History" but did not explain why this omission violated the standard of care or how it caused Buchanan's injuries. To establish causation, Buchanan needed to present evidence showing that the absence of a complete medical history had anything to do about causing her injuries. *Andrews v. Burke*, 55 Wn. App. 622, 629, 779 P.2d 740 (1989). Proximate cause cannot be established if the medical testimony requires the fact-finder to "resort to speculation or conjecture in determining the causal relationship." *McLaughlin v. Cooke*, 112 Wn.2d 829, 837, 774 P.2d 1171 (1989).

Similarly, the expert alleged multiple failures of protocol without providing sufficient explanation of the relevant standard of care or causation. He claimed that Passages "did not follow a Trauma Target Treatment Plan" but failed to clarify what such a plan entails or how its absence caused Buchanan's injuries. CP at 161. Likewise, the expert asserted that Passages omitted a "Target Assessment (Old Memory)" EMDR procedure without explaining what the procedure involves or why its omission caused harm. CP at 161. Other opinions are equally conclusory and vague, including claims that Passages "Kept Thera-tappers going throughout the sessions" and that the therapist "implemented his cognitions rather than the client's." CP at 161. The fact-finder would have to speculate about the meaning of terms like "Thera-tapper" and "cognitions," as well as how the therapist allegedly imposed his own cognitions and how this caused to Buchanan's injuries. The same issue arises with the expert's references to "Negative or

21

Positive Cognitions" and the claim that Passages "Consistently failed to return to Target and/or evaluate SUD[10] levels with client." CP at 161. The expert does not define "SUD levels" or explain how failing to assess them caused Buchanan's injuries.

Further, the expert's general statement that "[f]ailure to comply with the applicable standard of care, therefore, a direct and proximate result of the failure to follow proper EMDR therapy procedures is known and can cause harm to a client" does not state that the therapist *in this case* violated the applicable standard of care and *caused Buchanan's injuries*. CP at 161

All considered, the trial court did not abuse its discretion when it denied reconsideration.

FRAUD CLAIMS

Buchanan argues that the trial court erred in granting summary judgment on her fraud claims, asserting that she filed a certificate of merit and that her claims are not subject to the statutes governing health care negligence actions. In response, Passages contends that the certificate of merit was signed by an attorney not licensed in Washington and was unnecessary under the medical malpractice statutes. Additionally, Passages argues that Buchanan failed to submit admissible evidence supporting her fraud

---

[10] Subjective units of distress.

claims. We agree with Buchanan that the trial court erred in granting summary judgment on her fraud claims.

Passages moved for summary judgment on "all claims." CP at 55. However, beyond briefly mentioning them by name, Passages did not substantively address Buchanan's fraud claims in its motion. Instead, it broadly asserted that all actions for damages arising from health care fall under chapter 7.70 RCW and that Buchanan's claims, including her fraud claims, could not survive summary judgment without an expert declaration establishing the standard of care, breach, and causation. The trial court seemingly adopted this argument when it dismissed all of Buchanan's claims, including the fraud claims.

Under RCW 7.70.030,

> No award shall be made in any action or arbitration for damages for injury occurring as the result of *health care* which is provided after June 25, 1976, unless the plaintiff establishes one or more of the following propositions:
>
> (1) That injury resulted from the failure of a health care provider to follow the accepted standard of care;
>
> (2) That a health care provider promised the patient or his or her representative that the injury suffered would not occur;
>
> (3) That injury resulted from health care to which the patient or his or her representative did not consent.

(emphasis added).

The term "'health care' is not defined in chapter 7.70 RCW, [but] Washington courts have defined it as 'the process in which [a physician is] utilizing the skills which

[they] had been taught in examining, diagnosing, treating or caring for the plaintiff as [their] patient.'" *Wright v. Jeckle*, 104 Wn. App. 478, 481, 16 P.3d 1268 (2001) (some alterations in original) (internal citation omitted) (internal quotation marks omitted). In medical malpractice cases, expert testimony is generally required to establish the standard of care and is mandatory to prove proximate cause. *Berger*, 144 Wn.2d at 110.

Buchanan contends that her fraud claims do not fall under chapter 7.70 RCW because they do not arise from "health care" as defined by Washington courts. Passages did not meaningfully address this argument. We agree with Buchanan. Her fraud claims do not involve the therapist's professional skills in examining, diagnosing, treating, or caring for her as a patient; rather, they arise from Passages' insurance billing practices. Accordingly, to the extent that the trial court ruled that Buchanan needed medical expert testimony to survive summary judgment on her fraud claims, that ruling was error.

Because Buchanan's fraud claims fall outside the scope of chapter 7.70 RCW, Passages was required to independently establish the absence of a genuine issue of material fact as to those claims. Instead, Passages relied on the expert testimony requirement under the medical malpractice statutes, which was improper. Buchanan should be given the opportunity to pursue her fraud claims. Therefore, we reverse the trial court's summary judgment dismissal of Buchanan's fraud claims and remand for further proceedings.

We affirm summary judgment dismissal of Buchanan's medical malpractice claims, but reverse summary judgment dismissal of her fraud claims and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Cooney, J.